IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 24, 2009 Session

## STATE OF TENNESSEE v. ENRIQUE ALEJANDRO PEREZ

**Appeal from the Criminal Court for Hamblen County**
**No. 07CR489     John Dugger, Judge**

_____

**No. E2008-01391-CCA-R3-CD - Filed August 25, 2009**
_____

The Defendant, Enrique Alejandro Perez, appeals as of right from his jury conviction in the Hamblen County Criminal Court for aggravated kidnapping, a Class B felony, for which he received a sentence of ten years as a violent offender. On appeal, he argues that (1) the trial court erred in denying his motion to suppress his statement, (2) the trial court erred in denying his motion to strike the jury panel based upon his allegation of an under-representation of Latino persons, (3) the aggravated kidnapping statute, as applied in this case, is unconstitutional because he was not separately indicted for the underlying offense of rape, (4) there is insufficient evidence to support his conviction for aggravated kidnapping, and (5) the trial court imposed an excessive sentence. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P.  3 Appeal as of Right;  Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Greg Eichelman, District Public Defender; and Ethel P. Rhodes, Assistant District Public Defender, attorneys for appellant, Enrique Alejandro Perez.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Victor J. Vaughn, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

**OPINION**

The Defendant was convicted of the aggravated kidnapping of his ex-girlfriend, Jaquelin Rincon Perez. See Tenn. Code Ann. § 39-13-304(a)(1). The proof at trial showed that the Defendant abducted the victim from the parking lot of her workplace, drove her to his home, and raped her. Detective Lieutenant Christian Newman testified that she was called to a report of a kidnapping at Koch Foods in Morristown on June 14, 2007. Upon her arrival, she spoke to Vicky Ivy, an employee of Koch Foods. She left the business when she learned that Kevin Gentry, then-patrol officer with Hamblen County Sheriff's Department, had located the victim. Before leaving,

Detective Newman requested a surveillance video of the parking lot from the security department of Koch Foods.

Vicky Ivy, a supervisor at Koch Foods, testified that she knew both the Defendant and the victim from work. She recalled that the Defendant no longer worked at Koch Foods on June 14, 2007, and that the Defendant and the victim had broken up some time before that date. Ms. Ivy was in the parking lot waiting for her shift to begin on the morning of June 14 when she saw the Defendant approach the victim and lead her by her arm to his car. She recalled that the victim attempted to exit the moving vehicle but that the Defendant stopped her. Ms. Ivy testified that she was concerned about the incident because she knew that they had broken up. She reported the incident to a security guard. Ms. Ivy described the Defendant's treatment of the victim while they were dating as "very good to [the victim], very good. He loved her a lot, and probably still does."

Detective Kevin Gentry of the Hamblen County Sheriff's Department testified that he was dispatched to the Defendant's home on June 14 to investigate a report of a kidnapping. He recalled arriving at the residence to find the victim outside crying and "visibly shaken." He stated that when the Defendant came out of the house, the victim identified him as the man who had taken her from the parking lot of Koch Foods.

Jaqueline Perez testified that her relationship with the Defendant had ended three months prior to the incident on June 14, 2007. She recalled that as she walked into work, the Defendant approached her in the parking lot, grabbed her arm, and told her that he wanted to speak with her. The victim testified that he led her to his car and that although she attempted to get out, the Defendant held her arm. The victim said that the Defendant told her that she could not date anyone but him. She testified that she told the Defendant that taking her by force was a crime, but that the Defendant told her that "it didn't matter." The Defendant drove the victim to his home and forced her to his bedroom. The victim testified that once they were inside the room, the Defendant "told me that he was going to kill me. He squished my neck with his two hands. I was very afraid. I tried to get his hands loose, but I felt like I was suffocating." The victim stated that the Defendant took her clothes off and told her that he wanted to have sex with her. She told him repeatedly that she did not want to have sex, but the Defendant had sex with her anyway. When he was done, the Defendant told the victim she could leave. While the Defendant collected the victim's clothes, she grabbed his telephone and ran outside. The victim locked herself in the car until the police arrived. The Defendant blocked the vehicle with another one to prevent her from leaving. Once she saw the police approaching, the victim got out of the car. On cross-examination, the victim admitted that she had had sex with the Defendant since their break-up but contended that she did not voluntarily go with him or engage in sex during this incident.

Pam Taylor testified that she was a Detective Sergeant with the Hamblen County Sheriff's Department at the time of the incident. She was called to the Defendant's home to investigate a report of a kidnapping and rape. She was responsible for processing the crime scene. After finishing with the crime scene, Ms. Taylor went to the hospital to speak to the victim. She recalled that the victim did not speak English very well so she had to use an interpreter to take the victim's statement. After taking the victim's statement, Ms. Taylor went to the jail to speak with the Defendant. She testified that the Defendant had no difficulty communicating with her in English and that she advised

him of his Miranda rights, which he waived, prior to taking his statement. In his statement, the Defendant admitted to grabbing the victim and walking her to his car. He also stated that the victim tried to get out of the car but he grabbed her and "wouldn't let her out." The Defendant admitted that he pushed the victim down on his bed and began to hug and kiss her. He told Ms. Taylor that the victim "wouldn't let me kiss her" so he put a "hickey" on her neck to make her new boyfriend jealous. He told Ms. Taylor that the victim was crying during his assault. He also admitted to forcing her to have sex. He told Ms. Taylor that the victim grabbed the phone and ran outside so he unplugged the phone to prevent her from calling anyone. He also stated that he blocked the car to prevent her from leaving. The Defendant expressed remorse for what he had done, stating to Ms. Taylor, "I know I screwed up, and I regret what happened. . . . I thought if I had sex with her, she would realize she wanted to be with me, but it didn't happen." On cross-examination, Ms. Taylor insisted that an interpreter was not necessary to take the Defendant's statement because the Defendant "spoke fluently" with her.

Angela Star Cannon, a friend of the Defendant, testified that the Defendant had lived at her house for about three years and that, during that time, the victim lived with them for about six to nine months. She stated that they all went to the beach together, traveled to Gatlinburg, and generally socialized together. She described her relationship with both the Defendant and the victim as "really good friends." When asked about her reaction to the charge against the Defendant, Ms. Cannon said that she "couldn't believe it and I don't believe it." She described the victim's treatment of the Defendant during their relationship and said that the victim "would get really mad easily . . . . [and] she went with other men; [the Defendant] would take her back." She admitted that she considered herself a closer friend of the Defendant and that she had no personal knowledge of the events of June 14.

David King, the Defendant's landlord, testified that he rented a house to the Defendant and the victim and that the Defendant sometimes worked for him. Mr. King was at the residence on June 14 while the police were investigating the offense. He recalled seeing the victim and stated that "[s]he wasn't crying. Her hair wasn't messed up. . . . I didn't see no bruises or nothing of that nature." Mr. King recalled seeing the victim at the residence even after the couple had broken up. He also stated that the Defendant "was a lot thinner" when the two dated and that the victim "would get an advantage over him" even when horse-playing in the backyard. Mr. King testified that sometimes when the victim became angry at the Defendant, he would see the Defendant run and hide until the victim "calmed down." Mr. King stated that he never saw the Defendant get mad or raise his voice. He also testified that he tried to tell Ms. Taylor his impression of the relationship but that he "was brushed off."

Based upon this evidence, the jury convicted the Defendant of aggravated kidnapping, as charged in the indictment, and fixed a fine of twenty-five thousand dollars. The trial court imposed a sentence of ten years as a violent offender. Following a timely motion for new trial that was denied by the trial court, the Defendant filed a notice of appeal. This appeal is now properly before this court.

ANALYSIS

*Motion to Suppress*

The Defendant argues that the trial court erred in denying his motion to suppress his statement that, he claims, authorities elicited without a voluntary, knowing, and understanding waiver of his Miranda rights. He claims that because English is not his native language, he did not understand all of the concepts when waiving his Miranda rights. The State contends that the record supports the trial court's denial of the Defendant's motion to suppress. Following our review, we agree with the State.

Morristown Police Department Detective Alfonso Herrera testified that he arrived at the Defendant's residence to investigate the kidnapping report. He recalled speaking to two individuals, the Defendant and Antonio Mondragon, who both executed a consent to search. Detective Herrera stated that Spanish is his first language; therefore, because the Defendant and Mr. Mondragon were both Latino, he spoke to both men in Spanish and gave them consent to search forms that were also written in Spanish. He recalled that each man signed the consents to search voluntarily and prior to any arrest being made for the kidnapping.

Detective Sergeant Pam Taylor of the Hamblen County Sheriff's Department testified that she was also present at the Defendant's residence on the day of the incident. She stated that both city and county officers initially investigated the kidnapping allegation until it was determined which agency would handle the investigation and prosecution of the case. She assisted in processing the Defendant's residence for evidence. Later, she spoke to the Defendant at the jail after his arrest. She recalled that the Defendant spoke both English and Spanish fluently. She testified that the Defendant told her that he had graduated from Morristown East High School and had attended some college. After explaining the Miranda waiver to the Defendant in English, the Defendant voluntarily signed the waiver and gave Detective Taylor a statement recounting the events of the day. Detective Taylor recalled that she wrote the statement as the Defendant spoke, and she allowed the Defendant to read the statement to make any necessary corrections. The statement was admitted at the evidentiary hearing and indicates several corrections made by the Defendant. When asked why she did not utilize an interpreter for the statement, Detective Taylor stated that the Defendant spoke English fluently and that there was no need to obtain an interpreter.

"[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. Both proof presented at the suppression hearing and proof presented at trial may be considered by an appellate court in deciding the propriety of the trial court's ruling on a motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998); State v. Perry, 13 S.W.3d 724, 737 (Tenn. Crim. App. 1999). However, the prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. Furthermore, an appellate court's review of the trial court's application of law to the facts is conducted under a de novo standard of review. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001) (citations omitted).

Based upon the evidence presented at the evidentiary hearing, the trial court found that the Defendant was fluent in both English and Spanish. The trial court accredited the testimony of both witnesses that the Defendant voluntarily executed both the consent to search and the Miranda waiver. The trial court also found that the corrections made to the statement further indicated the Defendant's understanding of the process of the statement. Of note, the Defendant did not present any testimony regarding his inability to speak English. The trial court denied the motion to suppress, finding that the totality of these circumstances supported a finding that the Defendant voluntarily, knowingly and understandingly waived his Miranda rights. We conclude that the evidence does not preponderate against these findings. Accordingly, the trial court's denial of the motion to suppress is affirmed.

*Motion to Strike Jury Panel*

The Defendant contends that the trial court erred in denying his motion to strike the jury panel based upon his allegation that there is an under-representation of Latino persons on the venire because it is drawn from a roll of licensed drivers. The State argues that this issue is waived for failure to include any record containing a disposition of this issue in the trial court.

Our review of the record reveals no disposition of the Defendant's motion to strike the jury panel. The Defendant filed his motion to strike the jury panel on March 25, 2008, the day before trial. There is no evidence in the record that counsel argued the motion or that the trial court ruled upon the motion. In his reply brief, the Defendant contends that "[n]o response was made [to the motion] by the Attorney General because the motion stated the truth." The Defendant further argues that the trial court's decision to proceed to trial with the jury panel "was made in chambers. By not striking the panels and choosing jurors from other sources, the Court tacitly overruled the [D]efendant's motion." For these reasons, the Defendant contends that this issue is properly before this court.

Despite the Defendant's arguments to the contrary, there is absolutely no proof in this record that the motion to strike the jury panel was ever argued or ruled upon by the trial court. Similarly, the record contains no proof relative to the Defendant's allegation of under-representation of Latinos on the jury panel. Furthermore, although we note that the Defendant preserved the issue in his motion for new trial, the transcript of the motion for new trial hearing, a source from which this court might glean some understanding of what transpired relative to this motion, is also notably absent from this record. "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue." State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993) (citing State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1998)); see also Tenn. R. App. P. 24(b) (appellant has duty to prepare a record "as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal"). Under these circumstances, we conclude that the issue is waived.

*Constitutionality of Aggravated Kidnapping Statute*

The Defendant argues that the aggravating kidnapping statute, as indicted in this case, is unconstitutional because it requires proof beyond a reasonable doubt of an underlying felony (in this

case rape) that was not separately charged and tried. He contends that he was called to defend against a charge that he was not separately indicted for in violation of his due process rights. The State counters that this issue has been waived due to the Defendant's failure to include it in his motion for new trial.

The record reflects that the Defendant filed a pretrial motion asking the trial court "to direct the Attorney General to refrain from the use of the word Rape" at trial. Included in the written motion was the Defendant's argument that the indictment alleging an aggravated kidnapping in the perpetration of a rape without a separate indictment alleging rape constitutes a due process violation. At the hearing, the Defendant argued that he should not be forced to defend an offense that had not been alleged in a separate count of the indictment. The trial court overruled the motion finding that rape was "an element [of aggravated kidnapping] the state has to prove beyond a reasonable doubt."

We acknowledge that the Defendant did not allege any issue regarding the indictment in his motion for new trial. However, although perhaps not artfully worded, the Defendant's pretrial motion and related argument at the hearing attacks the constitutionality of the offense as indicted in this case. Such an allegation, if meritorious, would result in a dismissal of the prosecution. Therefore, we conclude that the Defendant's failure to include this issue in his motion for new trial does not result in a waiver of the issue on appeal. See Tenn. R. App. P. 3(e); State v. Williams, 675 S.W.2d 499, 501 (Tenn. Crim. App. 1984); State v. Givhan, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980) (waiver provision regarding the inclusion of issues in a motion for new trial does not apply to issues that would result in a dismissal of the indictment).

However, although double jeopardy considerations do not preclude dual convictions for both an aggravated kidnapping offense pursuant to Tennessee Code Annotated section 39-13-304(a)(1), and the underlying felony used to enhance it to an aggravated offense, see State v. Davis, 741 S.W.2d 120, 124 (Tenn. Crim. App. 1987), due process concerns may prevent dual convictions when the kidnapping is deemed incidental to another offense. See State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). However, we can discern no constitutional requirement that a defendant be separately charged and convicted of an underlying felony in order to hold sufficient the evidence supporting the primary felony. See State v. Torres, 82 S.W.3d 236, 245 (Tenn. 2002) (no requirement that the State seek dual convictions for felony murder and underlying felony). For these reasons, we conclude that the indictment in this case was not based upon an unconstitutional statute.

*Sufficiency of the Evidence*

The Defendant contends that the evidence is insufficient to convict him of aggravated kidnapping because there is insufficient proof of a rape based upon inconsistencies in the victim's testimony and what the Defendant characterizes as problems with her credibility as a witness related to her citizenship status. The State contends that "[t]he evidence is sufficient for a reasonable trier of fact to find that the Defendant knowingly removed [the victim] from her workplace against her will and raped her in his home." Following our review, we agree.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the

prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. <u>See</u> <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. <u>Id.</u>; <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. <u>State v. Pendergrass</u>, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

A conviction of aggravated kidnapping, as indicted in this case, requires proof beyond a reasonable doubt that the defendant "knowingly remove[d] or confine[d] another unlawfully so as to interfere substantially with the other's liberty" in order "[t]o facilitate the commission of any felony..." Tenn. Code Ann. § 39-13-304(a)(1). The victim testified that the Defendant approached her in the parking lot of her workplace and grabbed her arm to force her to his car. When she tried to exit from the passenger-side door of the moving vehicle, the Defendant grabbed her to prevent her escape. The victim further testified that the Defendant pushed her down on his bed and forced her to have sex. She stated that throughout the incident, she told the Defendant that she did not want to be with him and that she did not want to have sex with him. Any questions regarding her credibility that may have been raised by cross-examination were resolved by the jury, as was their province to do. Furthermore, the Defendant admitted to the acts in his statement to the police. We conclude that the evidence is sufficient to support the Defendant's conviction of aggravated kidnapping.

*Sentencing*

In his final issue, the Defendant contends that the trial court imposed an excessive ten-year sentence for his aggravated kidnapping conviction. He argues that the trial court's application of two enhancement factors are not supported by the record: that the crime was committed to gratify the defendant's desire for pleasure or excitement, Tenn. Code Ann. § 40-35-114(7), and that the defendant had no hesitation about committing a crime in which the risk to human life was high, Tenn. Code Ann. § 40-35-114(11). The Defendant asks this court to reduce his sentence to the minimum eight years applicable for a Range I offender convicted of a Class B felony. The State contends that the trial court correctly applied the enhancement factors in arriving at the ten-year sentence.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under

the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred.  State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  In this respect, for the purpose of meaningful appellate review,

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994) (citation omitted); see Tenn. Code Ann. § 40-35-210(e).

Tennessee's Sentencing Act provides:

(c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender.  In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c)(1)-(2).

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Id. § (d)-(f); State v. Carter, 254 S.W.3d 335, 342-43 (Tenn. 2008). "An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in . . . the Sentencing Act." Carter, 254 S.W.3d at 346. Accordingly, on appeal we may only review whether the enhancement and mitigating factors were supported by the record and their application was not otherwise barred by statute. See id.

In imposing a sentence, the trial court may only consider enhancement factors that are "appropriate for the offense" and "not already . . . essential element[s] of the offense." Tenn. Code Ann. § 40-35-114. These limitations exclude enhancement factors "based on facts which are used to prove the offense" or "[f]acts which establish the elements of the offense charged." Jones, 883 S.W.2d at 601. Our supreme court has stated that "[t]he purpose of the limitations is to avoid enhancing the length of sentences based on factors the legislature took into consideration when establishing the range of punishment for the offense." State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997); Jones, 883 S.W.2d at 601.

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) the defendant's potential for rehabilitation or treatment, and (8) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee. Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

The record reflects that the trial court followed the applicable sentencing principles and appropriately found the existence of applicable enhancement factors and mitigating factors. Under the revised Sentencing Act, this court may not review the weight afforded the sentencing and mitigating factors provided the trial court followed the principles of sentencing. Given that the enhancement factors were supported by the record and the trial court considered the mitigating factors as required, we conclude that the trial court followed the appropriate sentencing principles in this case. We therefore affirm the Defendant's ten-year sentence for his aggravated kidnapping conviction.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE